(85 App. Div. 235.)

### In re BREWSTER.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. INTOXICATING LIQUORS—HOTELS.

Evidence examined on an application to revoke a liquor tax certificate, and *held* to sufficiently show that the place where the liquor was sold had been occupied as a hotel on March 23, 1896, within the meaning of the liquor tax law, which in section 31, as amended by section 22, c. 312, p. 233, Laws 1897, defines a hotel as a place "regularly used and kept open for the feeding and lodging of guests," and having at least six furnished bedrooms for their occupancy therein, and having no other dwellers other than the family and servants of the hotel keeper, and in section 17 provides that consents to the sale of intoxicating liquors

shall not be required when the place was occupied as a hotel on March 23, 1896.

**2. SAME—ABANDONMENT OF BUILDING AS HOTEL.**

If the owner of a building used as a hotel on March 23, 1896, subsequently abandons such use of it, his right to a liquor tax certificate without obtaining the necessary consents is lost.

**3. SAME—EVIDENCE—SUFFICIENCY.**

After March 23, 1896, the owner of a building which had before been used as a hotel leased a part of it to a milliner, another portion to a barber, and rooms upstairs to a dressmaker. All three resided therein with their families, as did the owner. The rest of the building was leased to a tenant, who kept it as a boarding house, but received transient guests when they applied. He had only five rooms which he could apply to the use of transients and boarders. *Held* to show an abandonment of the premises as a hotel within the liquor tax law.

Appeal from Essex County Court.

Application by Byron R. Brewster for the revocation of a liquor tax certificate, No. 28,566, granted to Frank L. Hillman. Application denied (see 80 N. Y. Supp. 666), and applicant appeals. Reversed.

The appellant, Brewster, petitioned the county judge of Essex county for the cancellation of a liquor tax certificate issued to Frank L. Hillman, the respondent herein. In his application for the certificate, which was issued to him May 17, 1902, Hillman stated that there were several parties dwelling within 200 feet of the place where he proposed to sell the liquor, and that he had not obtained their consents to such certificate's issuing. But he stated that such premises were actually occupied as a hotel on March 23, 1896, when the law was passed, and that therefore he was excused from obtaining such consents, under the provisions of subdivision 8 of section 17 of the liquor tax law, Laws 1897, p. 220, c. 312. He also stated that such premises had been continuously occupied as a hotel since that date. Brewster claimed that such premises were not then, nor had they since been, occupied as a hotel, and that therefore the certificate to Hillman was improperly issued. Certain other objections were taken by him to the validity of the certificate, all of which were overruled by the county judge, and, after a hearing, an order and judgment was entered dismissing his petition with costs. From such order and judgment he has taken this appeal.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Smith & Wickes (Francis A. Smith, of counsel), for appellant.
A. W. Boynton, for respondent.

PARKER, P. J. The first question presented is whether, on the evidence, the premises were so occupied on March 23, 1896. The answer turns upon whether the use to which such premises were then put constituted them a hotel or a mere boarding house. I am inclined to think that the definition of a hotel as given in the statute itself should control in this case. If the building in question was then "regularly used and kept open for the feeding and lodging of guests," and there were at least six furnished bedrooms for their occupancy therein, and there were no dwellers therein other than the family and servants of the hotel keeper, it was a hotel within the meaning of the statute. See section 31 of such law, as amended by section 22, c. 312, p. 233, Laws 1897.

Cummings, who built the building in 1892, and who himself occupied it until May, 1896, testified that there were then more than eight

bedrooms in it, and that he at all times during that period entertained guests for hire—any one who came—either for single meals, lodging, or board. And it also appears that during that period a few such traveling guests were entertained. But it is also apparent that most of those who occupied his house were boarders at agreed prices by the week or month. From the time it was built, a sign designating it as a "Boarding House" was kept upon the building. Cummings testified: "I built the house, and called it a boarding house." There was no notice or advertisement anywhere, inside or outside of the house, designating it as a hotel, or indicating that transient guests would be received there; and I have no idea that Cummings himself considered that he was keeping anything more than a boarding house. During several years while he occupied it he gave up a large part of the first floor to a grocery store which he himself kept, and he at no time sold any liquor on the premises. Yet it cannot be fairly disputed but that he received and cared for every traveler or transient guest that applied, and it is conceded that he had the requisite number of rooms, and there were then no other dwellers in the building. The fact that the guests were very few, probably should not control the character of the business which he carried on there. I do not know that we can say, on the evidence, that he did not "regularly keep the place open for the feeding and lodging of guests." Hence it would seem to have then been used as a hotel, within the definition of the law.

But the further question remains whether after the passage of such law the premises were not abandoned as a hotel, and so the right to a certificate, without the consent of those dwelling within 200 feet thereof, lost. If the subsequent acts of the owner justify the conclusion that he intended to discontinue or abandon the use of the building as a hotel, then his right to a certificate without the consents was lost. Matter of Hawkins, 165 N. Y. 188, 192, 58 N. E. 884. It is claimed by the appellant that the evidence warrants such conclusion.

It is apparent that at times since March, 1896, the use of the premises would not have constituted it a hotel within the meaning of the liquor tax law. After 1896 the part used by Cummings as a grocery store was leased by him to Bartlett as a millinery shop and rooms in which Bartlett's family dwelt and kept house. Humphreys also leased from him a room for a barber shop, and also other rooms in which his family kept house. On the third floor, rooms were let to a dressmaker, who dwelt therein. Cummings himself retained rooms in the building, in which he and his family kept house. The rest of the house seems to have been leased to a tenant who kept it as a boarding house, but received transient guests and travelers whenever they applied. During a portion of this time, however, the rooms under the control of the tenant, and which he could apply to the use of boarders or transient guests, were reduced to five. Thus it is evident that the building, for a year or more before Hillman bought it and obtained his certificate, was not in fact used as a hotel within the meaning of the law. The larger part of the building was used substantially as a tenement house, and a part only, and that not enough to provide the requisite number of sleeping rooms, was given up to a boarding house and hotel. Do these facts indicate an intent on Cummings' part to

abandon the building as a hotel? Assuming, as we must, that Cummings knew what constituted a hotel within the meaning of the liquor tax law, it seems clear that he was willing to use his building in a manner that would exclude it from that category, and thus deliberately gave up the right to a certificate without consents, which the law gave him had the use continued as it was in 1896. If he himself, just prior to his sale to Hillman, had asked for a certificate without consents, on the ground that in March, 1896, he kept a hotel there, the plain answer would have been that since then he had given the business up to another use, and that as then used it did not answer the requirements of a hotel. It is easier to reach this conclusion from the fact that Cummings himself never sought to sell liquor on the premises; never sought to avail himself of any of the privileges of a hotel keeper, as applicable to the business of selling liquor; and in fact all the time considered the business as that of a boarding house rather than of a hotel. Each of his tenants, after 1896, testified that they leased it as a boarding house, and Cummings does not appear to have ever claimed anything more for it. In the face of this conduct on Cummings' part, it is straining the evidence beyond warrant to hold that his grantee may now claim that the right to a certificate without the consents still attaches to this property.

Without considering the other questions raised by the appellant, I conclude that the order and judgment should be reversed on the law and the facts, and that the application of the petitioner should be granted.

Order and judgment reversed on law and facts, with costs, and application of petitioner granted, with costs. All concur.